**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **WILLIAM ERNEST KAPANKE, JR.,** | : | |
| | : | **CIVIL ACTION NO.:** |
| **Plaintiff,** | : | |
| | : | |
| **V.** | : | ***JURY TRIAL DEMANDED*** |
| | : | |
| **VSBLTY INC.,** | : | |
| | : | **MAY 18, 2026** |
| **Defendant.** | : | |

## COMPLAINT

Plaintiff William Ernest Kapanke, Jr. ("Kapanke"), for his complaint against defendant VSBLTY Inc. ("VSBLTY"), through his attorneys, Lucas & Varga LLC, alleges as follows:

## NATURE OF THE ACTION

This is an action seeking damages for the non-payment of contracted-for wages earned, due and owing but which remain unpaid despite due demand, promises of payment, and an ongoing admitted contractual obligation to make said payments.

## PARTIES

1. Plaintiff Kapanke is a citizen of the State of Connecticut, residing in Cos Cob, Connecticut.

2. Defendant VSBLTY is a Delaware corporation having its principal place of business in Philadelphia, Pennsylvania.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because there is a complete diversity of citizenship between Plaintiff, who is a citizen of Connecticut, and Defendant, a Delaware corporation having its principal place of business in

Philadelphia, Pennsylvania.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      The Court has personal jurisdiction over all parties, and venue is proper in this District under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**FACTUAL ALLEGATIONS**

5.      In 2023, Kapanke, through his single-member limited liability company, Kapanke, LLC, was a member and part owner of a Delaware limited liability company operating out of its principal office in Norwalk, Connecticut called Shelf Nine LLC ("Shelf Nine"), which was engaged in the business of providing video displays in retail food locations for the purpose of displaying advertising to retail customers.

6.      Pursuant to a certain membership purchase agreement dated October 20, 2023, by and between VSBLTY, Shelf Nine, and other related individuals and entities (the "Purchase Agreement"), VSBLTY acquired 100% of the issued and outstanding membership interests of Shelf Nine.

7.      In accordance with the terms of the Purchase Agreement, VSBLTY and Kapanke entered into an employment agreement dated October 31, 2023 ("the "Employment Agreement") whereby Kapanke agreed to perform services for VSBLTY related to the operation of Shelf Nine as part of an "earn-out period" through June 30, 2026, plus an additional six-month period extending through December 31, 2026.

8.      Under the Employment Agreement, Kapanke had the title of Chief Operating Officer ("COO") of VSBLTY Media Division, reporting to that Division's President, and worked primarily from his home office in Connecticut.

2

9.      Pursuant to the terms of the Employment Agreement, Kapanke's initial annual base salary was $150,000. This sum was to be supplemented on the first year anniversary of Employment Agreement (i.e., on October 31, 2024) with an award of stock options or other equity grants from VSBLTY or its parent entity with a value equaling $50,000, along with an increase in the annual base salary to a "market rate" to be mutually agreed upon in good faith. Thereafter, on the second anniversary of the Employment Agreement (i.e., October 31, 2025), Kapanke's annual base salary was to increase to no less than $310,000.

10.     Pursuant to the terms of the Employment Agreement, Kapanke also was to be paid a sign-on bonus of $100,000 no later than 6 months after the date of the Employment Agreement (i.e., on or before April 30, 2024), said bonus to be paid in cash or equity within 90 days of the end of VSBLTY's fiscal year.

11.     Kapanke commenced employment with VSBLTY on October 31, 2023 and performed all services required of him under the Employment Agreement.

12.     VSBLTY failed to compensate Kapanke in accordance with the terms of the Employment Agreement. Specifically, VSBLTY (a) missed various payments of Kapanke's salary totaling at least $46,633.83; (b) failed to reimburse Kapanke legitimate business expenses totaling $29,967.05; (c) failed to pay Kapanke the $100,000 sign-on bonus; and (d) failed to engage in good faith discussions, or to increase Kapanke's salary to the "market rate" on his first anniversary as required.

13.     The foregoing failures constituted breaches of the Employment Agreement by VSBLTY.

14.    The foregoing breaches by VSBLTY gave the right to Kapanke under the terms of the Employment Agreement to resign for "Good Reason," as defined therein, upon notice and a 10-day period in which to cure.

15.    Throughout the period of Kapanke's employment, VSBLTY acknowledged the foregoing breaches and its failure to properly pay Kapanke but requested he remain in its employ, promising to make good on all missed payments when it was able, the estimated dates of which were continually revised, thereby inducing Kapanke to remain in VSBLTY's employ and not to trigger his resignation for "Good Reason."

16.    Kapanke believed VSBLTY and relied upon its representations of forthcoming make-up payments, thereby refraining from triggering the resignation for "Good Reason" provision in the Employment Agreement.

17.    However, when VSBLTY failed and refused to abide by its obligation to raise Kapanke's base compensation on the anniversary of the Employment Agreement (October 31, 2024), Kapanke finally tendered his resignation for Good Reason under the Employment Agreement. This resignation was tendered on November 1, 2024 effective on November 11, 2024, upon the expiration of a 10-day cure period required under the Employment Agreement.

18.    Upon the effective date of Kapanke's resignation (November 11, 2024), VSBLTY became obligated under the terms of the Employment Agreement to pay Kapanke all Base Salary and Bonuses fully earned but not yet paid through the date of termination, as well as all stock awards due, all expense reimbursements due, and all accumulated unused paid time off, as well as to pay Kapanke severance in an additional sum equaling his Base Salary to be paid from his termination date through June 30, 2027 (12 months after expiration of the "Earn-Out Period" (which Earn-Out Period was defined to be June 20, 2026).

4

19.     During his employment and at the time of Kapanke's resignation, and periodically thereafter, VSBLTY confirmed it owed Kapanke past wages and expenses and other sums. For example, on or about November 13, 2025, Kapanke spoke with Amin Shahidi, VSBLTY Executive Chairman and Board member, who had reached out to Kapanke via email on November 10, 2025 seeking to discuss the delinquent payment situation. During the November 13, 2025 telephone call, Mr. Shahidi confirmed VSBLTY's obligation to pay outstanding salary and business expenses, as well as severance under the terms of the Employment Agreement. Mr. Shahidi indicated VSBLTY would eventually pay the sums due but needed at least two to three months before Kapanke would see any initial payments. Mr. Shahidi asked Kapanke to wait and be patient. This was followed-up with additional promises of payment in April 2026.

20.     Despite due demand, VSBLTY has continued to fail and refuse to make any of the foregoing payments due but unpaid under the terms of the Employment Agreement.

**<u>FIRST COUNT</u> (Breach of Contract)**

21.     Kapanke hereby repeats and realleges Paragraphs 1 through 20 as if more fully set forth herein.

22.     VSBLTY breached the Employment Agreement in failing to properly compensate Kapanke as set forth in Paragraphs 1 through 20, above.

23.     As a result of VSBLTY's breach of the Employment Agreement, Kapanke has suffered and will continue to suffer damages.

**<u>SECOND COUNT</u> (Breach of the Implied Covenant of Good Faith and Fair Dealing)**

24.     Kapanke hereby repeats and realleges the allegations of Paragraphs 1 through 23 of the First Count as if fully set forth herein.

25.     The Employment Agreement carried with it an implied covenant of good faith and fair dealing, pursuant to which VSBLTY was required to refrain from conduct that would deprive Kapanke from receiving the reasonably expected benefits of that agreement.

26.     Kapanke reasonably expected to receive the benefits of the Employment Agreement.

27.     VSBLTY breached the implied covenant of good faith and fair dealing by intentionally and in bad faith refusing to pay Kapanke his full compensation and earned post-employment payments in violation of the Employment Agreement.

28.     As a result of VSBLTY's breach of the implied covenant of good faith and fair dealing, Kapanke has suffered and will continue to suffer damages.

**THIRD COUNT** (Negligent Misrepresentation)

29.     Kapanke hereby repeats and realleges the allegations of Paragraphs 1 through 28 of the Second Count as if fully set forth herein.

30.     The representations and promises set forth in Paragraphs 15 and 19, above, were made in the course of business and were made by VSBLTY without the exercise of reasonable care and competence in obtaining or communicating the information contained therein.

31.     Kapanke relied on these false representations in the conduct of his activities and in making his decisions regarding employment, and the timing of the commencement of this action, and was damaged thereby.

**FOURTH COUNT** (Violation of Connecticut Wage Statute)

32.     Kapanke repeats and realleges the allegations of Paragraphs 1 through 23 of the First Count as if fully set forth herein.

6

33.    VSBLTY has an obligation to pay Kapanke all of his earned compensation under the Employment Agreement.

34.    VSBLTY is an "employer" as that term is defined in Conn. Gen. Stat. §31-71a(1).

35.    Kapanke was an "employee" of VSLBTY as that term is defined in Conn. Gen. Stat. §31-71a(2).

36.    The earned compensation owed to Kapanke constitutes "wages" within the meaning of Conn. Gen. Stat. § 31-71a(3).

37.    VSBLTY's failure and refusal to pay wages to Kapanke when due is in violation of Conn. Gen. Stat. §§31-71b, 31-71c, and/or 31-71e.

38.    VSBLTY's failure and refusal to pay Kapanke wages when due is without justification and has caused Kapanke to incur substantial monetary loss.

39.    As a result of VSBLTY's conduct as alleged above, Kapanke is entitled to recover double damages and attorneys' fees and costs of this action pursuant to Conn. Gen. Stat. §31-72.

*WHEREFORE*, plaintiff William Ernest Kapanke prays for the following:

1.     Compensatory damages;

2.     Punitive damages under common law;

3.     Double damages pursuant to Conn. Gen. Stat. § 31-72;

4.     Attorneys' fees pursuant to Conn. Gen. Stat. §§ 31-72 and under common law;

5.     Interest pursuant to Conn. Gen. Stat. § 37-3a on all sums wrongfully withheld and retained by Defendant;

6.     Costs of this action; and

7.     Any and all further relief the Court deems just and equitable.

**Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.**

**PLAINTIFF**
**WILLIAM ERNEST KAPANKE, JR.**

By____/s/ Scott R. Lucas_____
   Scott R. Lucas (#303944)
   Lucas & Varga LLC (#431013)
   2425 Post Road, Suite 200
   Southport, CT 06890
   Phone: (203) 227-8400
   Fax: (203) 227-8402
   slucas@lucasvargalaw.com

His Attorneys